The document below is hereby signed.

Signed: July 15, 2019



*S. Martin Teel, Jr.*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GREGORY N. BROWN, | ) | Case No. 16-0000289 |
| | ) | (Chapter 13) |
| Debtor. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER
<u>DISPOSING OF EMERGENCY MOTION TO REINSTATE AUTOMATIC STAY</u>

PNC Bank, National Association ("PNC") takes the position that the automatic stay has terminated pursuant to the terms of the *Consent Order Modifying Automatic Stay* (Docket Number 68). In response, the debtor has filed an *Emergency Motion to Reinstate the Automatic Stay*. However, it is evident that the automatic stay was not terminated pursuant to the terms of the *Consent Order*.

On November 3, 2016, the court entered the *Consent Order Modifying Automatic Stay*, which provided that the debtor was to make regular monthly mortgage payments of $1,376.55 when due and specified that all payments "should be made" to PNC at an address in Ohio. The *Consent Order* provided:

if the Debtor defaults upon payment under the terms of

> this order . . . then the Movant [meaning PNC] shall
> mail notice to the Debtor allowing an additional ten
> (10) days from the mailing of the notice to cure in
> certified funds and shall file an Affidavit of Default
> with the Court. . . . If after ten (10) days from the
> mailing of the notice, the payment remains in arrears,
> Movant . . . shall be free to commence a foreclosure
> proceeding . . . without further order of the court.

On March 13, 2019, PNC filed and mailed to the debtor a *Notice of Default*, noting that the debtor was in default with respect to three payments of $1,421.15 (for the months of January, February, and March, 2019), which, after reducing the total of $4,263.45 by a $582.06 suspense balance, resulted in a default of $3,681.39. To this, PNC added $50.00 as a "Notice of Default Fee" bringing the stated default to $3,731.39. The *Notice of Default* recited at paragraph 4: "Pursuant to the terms of the Order, within 10 days of the filing of this notice you may [among other options]: Cure the default by paying the amount of $3,731.39 to the below listed address." The "below listed address" was the address of PNC's attorney in Richmond, Virginia, not PNC's Ohio address.

   The *Notice of Default* was defective in stating a deadline to cure of 10 days after filing of the *Notice of Default*. Ten days after filing of the *Notice of Default* was Saturday, March 23, 2019, and the debtor has not contended that he cured the default by that date or the next business day of Monday, March 25, 2019. However, the *Consent Order* plainly provided that any notice of default was to be a notice "allowing an additional ten (10) days from the mailing of the notice to cure in certified funds . . .

2

." A deadline to cure of 10 days from the mailing of the notice results in the deadline being subject to Federal Rule of Bankruptcy Procedure 9006(f), which provides:

> When there is a right or requirement to act . . . Within a prescribed period after service in that service is by mail . . ., Three days are added after the prescribed period would otherwise expire under Rule 9006(a).

10 days after March 13, 2019, was March 23, 2019, a Saturday. Under Rule 9006((a)(1)(C), that made the deadline Monday, March 25, 2019, with three days to then be added under Rule 9006(f), making the deadline Thursday, March 28, 2019.

Because the *Notice of Default* failed to give notice that a cure could be made within 10 days of mailing of the *Notice of Default*, the notice was not a valid notice under the terms of the *Consent Order*. Accordingly, the automatic stay remains in place.[1]

Moreover, the debtor has submitted documents showing that he timely made a cure payment in excess of the declared default. Specifically, the documents are (1) a Purchaser Copy of a $4,000.00 cashier's check obtained from PNC on March 28, 2019, and made payable to PNC, and (2) a receipt from PNC, at a branch

---

[1] PNC filed a *Declaration of Default* on March 27, 2019, stating the automatic stay was terminated. The debtor did not file his *Emergency Motion* until July 10, 2019, only six days before the foreclosure was to proceed on July 16, 2019. That was unreasonable delay, but it does not change the fact that the automatic stay was not terminated by PNC's defective *Notice of Default*.

in Baltimore, Maryland, showing that the debtor made a payment on March 28, 2019, on an account at PNC in the amount of $4,000.00, with the receipt's listing of the account's last four digits matching the debtor's mortgage account's last four digits.  PNC, which had to respond to the *Emergency Motion* on short notice, has not admitted receipt of that $4,000.00, but I will not hold a hearing to determine whether the debtor made the payment when PNC never gave proper notice of the deadline to cure the default.

In accordance with the foregoing, it is

ORDERED that the debtor's *Emergency Motion to Reinstate Automatic Stay* (Dkt. No. 84) is disposed of as follows.  It is further

ORDERED that the automatic stay has not terminated to permit PNC to proceed with foreclosure, and the debtor's request to reinstate the automatic stay is dismissed as moot.

[Signed and dated above.]

Copies to: E-recipients of orders.